## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

YAZAN SALEH, individually and on behalf
of all others similarly situated,

     Plaintiff,

v.

MIAMI GARDENS SQUARE ONE, INC.
D/B/A TOOTSIE'S CABARET,
a Florida corporation, and RCI
HOSPITALITY HOLDINGS, INC., a Texas
Corporation,

     Defendants.

**CLASS ACTION**

**JURY TRIAL DEMANDED**

### CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
### FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)

Plaintiff YAZAN SALEH ("Plaintiff"), on behalf of himself and other similarly situated

individuals, alleges the following, in relevant part, upon information and belief, and his own

personal knowledge.

### I.    *NATURE OF THE CASE*

1.    This class action complaint is based upon Defendants' violations of the Fair and

Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15

U.S.C. § 1681 *et seq.*, as amended (the "FCRA").  Specifically, this action is based upon Section

1681c(g) of the FCRA, which states that, "no person that accepts credit cards or debit cards for

the transaction of business shall print more than the last 5 digits of the card number or the

expiration date upon any receipt provided to the cardholder at the point of the sale or

transaction."  Despite the clear language of the statute, Defendants willfully chose not to comply

with the FCRA.  As such, all consumers who purchased goods or services from Defendants using

1

a credit or debit card suffered violations of Section 1681c(g), have been uniformly burdened with an elevated risk of identity theft, and are entitled to an award of statutory damages.

## II.    *JURISDICTION AND VENUE*

2.    This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise under violation of a federal statute.

3.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here.  Defendants do business in this District and their contacts here are sufficient to subject them to personal jurisdiction.

## III.    *PARTIES*

4.    Plaintiff YAZAN SALEH ("Plaintiff") is a natural person, who resides in the State of Florida, Broward County.

5.    Defendant, MIAMI GARDENS SQUARE ONE, INC. D/B/A TOOTSIE'S CABARET ("Defendant" or "Tootsie's Cabaret"), is a Florida corporation whose principal address is 150 NW 183rd Street Miami Gardens, Florida  33169.

6.    Defendant, RCI HOSPITALITY HOLDINGS, INC., ("Defendant" or "RCI Hospitality"), is a Texas corporation whose principal address is 10959 Cutten Road, Houston, Texas 77066.

7.    Defendant Tootsie's Cabaret is the country's largest adult entertainment complex and a subsidiary of RCI Hospitality Holdings, Inc.  Tootsie's Cabaret's complex consists of 74,000 square feet, more than 300 attractive entertainers, four full liquor bars, a 400-plus square

foot main stage, more than 300 hi-definition TV screens, three levels of VIP areas, and a 15,000 square foot Knockers Sports Bar.[1]

8.      On August 3, 2015, RCI Hospitality, a leading operator of gentlemen's clubs, announced the acquisition of Tootsie's Cabaret.  At any relevant time, RCI Hospitality had control over its subsidiary Tootsie's Cabaret having assumed management of the Miami club on December 1, 2015.[2]

### IV.      FACTUAL ALLEGATIONS

#### A.  Background

9.      In 2003, FACTA was enacted by Congress, and signed into law by President George W. Bush.  One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections for consumers.

10.      One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

11.      Codified at 15 U.S.C. § 1681c(g), this provision states the following:

*Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

(hereinafter, the "Receipt Provision").

---

[1] *See Tootsie's Cabaret Miami Named "Club of The Year" at Industry Convention*, PR News Wire (Sep 02, 2015), http://www.prnewswire.com/news-releases/tootsies-cabaret-miami-named-club-of-the-year-at-industry-convention-300136828.html.

[2] *Rick's Cabaret International, Inc. Enters Florida Market With $25 Million Acquisition of Tootsies Cabaret*, Press Release, (August 2, 2015), http://www.rcihospitality.com/130/pressrelease.aspx.

12.     After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

13.     The requirement was widely publicized among retailers and the FTC.

14.     For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.   The card's expiration date will be eliminated from receipts altogether. . . .   The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ."  "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

15.     Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

16.     The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

17.     For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."   VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

18.     Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress

4

passed a law absolving all *past* violations of FACTA.  *See* The Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, 122 Stat. 1565 (2008).

19.     Importantly, the Clarification Act did not amend FACTA to allow publication of more than the last 5 digits of the card number.  Instead, it simply provided amnesty for past violators up to June 3, 2008.

20.     Card processing companies continued to alert merchants, including Defendant of FACTA's requirements.  According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt.  (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)

> To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

> *See* Visa Alert attached hereto as <u>Exhibit A</u>.

21.     Upon information and belief, most of Defendants' business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement.  Defendants could have readily done the same.

22.     Not only were Defendants informed they could not print more than the last five numbers, it was contractually prohibited from doing so.  Defendants accept credit cards from all

major issuers; these companies set forth requirements that merchants, including Defendants, must follow, including FACTA's redaction and truncation requirements.

23.     As noted above, the processing companies have required that the credit card account number be redacted since 2003 and still require it.  For example, American Express required:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

> *See* <u>Exhibit B</u>, attached hereto.

24.     Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

> *See* <u>Exhibit C</u>, attached hereto.

25.     According to data from the Federal Trade Commission's 2015 Consumer Sentinel Network Data Book, Florida with its 306,133 complaints ranks No. 1 for the highest per capita rate of reported fraud and other types of complaints.  For identity theft, Florida is ranked No. 3 in the country with a total of 44,063 complaints.  Also, eight of the top 20 metro areas for identity theft are in Florida, according to the report.  First is the Homosassa Springs area with 1290.0

complaints per 100,000 people, and the Miami area counts 482.3 complaints per 100,000 people.[3]

26.     So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (<http://www.annualcreditreport.com>) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

27.     In February 2014, the Department of Justice reported that from 2008 through May 2012, over 550,000 taxpayers had their identities stolen with the thieves claiming false tax refunds.  Notwithstanding the constant efforts and new regulations to prevent identity theft, "greater efforts are [still] needed to address identity theft issues."[4]

28.     FACTA clearly prohibits the printing of more than the last 5 digits of the card number to protect persons from identity theft.

### B.  *Plaintiff's Factual Allegations*

29.     On December 27, 2016, Plaintiff incurred two charges for services and/or goods purchased at Defendant Tootsie's Cabaret's club located at 150 NW 183rd Street Miami Gardens, Florida  33169.

30.     Plaintiff paid for said goods and services using two different personal VISA® credit cards.  Upon making the payment, he was provided with two electronically printed receipts

---

[3] *Consumer Sentinel Network Data Book for January-December 2015*, Federal Trade Commission (February 2016), https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2015/160229csn-2015databook.pdf.
[4] Annette Nellen, *TTINs and protecting taxpayer identities* (September 11, 2014), https://www.aicpastore.com/Content/media/PRODUCER_CONTENT/Newsletters/Articles_2014/Tax/TTINs.jsp.

bearing the Miami Gardens Square 1 Inc. name, which also displayed the last four digits of his credit card *as well as the first six digits of his account number*.

31.     Upon information and belief, the violations at issue have taken place at dozens of RCI Hospitality subsidiaries across the United States, including but not limited to the Tootsie's Cabaret in Miami Gardens, Florida.

32.     Upon information and belief, the violations at issue arose when Defendants installed dozens (if not hundreds) of credit card payment systems in its many clubs across the United States.

33.     Upon information and belief, prior to the rollout of the new point-of-sale system, Defendants had a written policy in place requiring the truncation of credit card account numbers; this is evidenced by the fact that prior to the installation of the aforementioned retail system, Defendants were actually truncating credit card account numbers.

34.     Upon information and belief, a manual was provided to RCI Hospitality and Tootsie's Cabaret for the operation of the new point-of-sale system which explained that the retailer is able to determine which fields will appear on a printed receipt and further explained that the retailer is able to truncate credit card numbers and mask expiration dates.

35.     Upon information and belief, it would take an individual less than thirty seconds to run a test receipt in order to determine whether the point-of-sale system was in compliance with federal law(s) or Defendants' own alleged written policy requiring the truncation of credit card numbers.

36.     Moreover, Defendant RCI Hospitality had actual knowledge of the statute's requirements.  In fact, in its Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, for the fiscal year ended September 30, 2016, RCI Hospitality noted that:

We may in the future become subject to lawsuits or other proceedings for purportedly fraudulent transactions arising from the actual or alleged theft of our customers' debit and credit card information or if customer or employee information is obtained by unauthorized persons or used inappropriately. Any such claim or proceeding, or any adverse publicity resulting from such an event, may have a material adverse effect on our business.

37.     The Annual Report was signed by Eric S. Langan, Chief Executive Officer and President of RCI Hospitality.

38.     Furthermore, Steven L. Jenkins,[5] director of RCI Hospitality is a member of the American Institute of Certified Public Accountants ("AICPA") that has published at least two articles concerning the need to comply with FACTA to prevent identity theft.[6]

39.     The law is well settled that the knowledge of a corporation's directors may be imputed to the corporation.  *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998); *In re Hellenic Inc.,* 252 F.3d 391, 395 (5th Cir. 2001) (noting that "courts generally agree that the knowledge of directors or key officers, such as the president and vice president, is imputed to the corporation").

40.     In addition to having a written policy and its board members and directors having personal knowledge of FACTA's truncation requirements, Defendants RCI Hospitality and Tootsie's Cabaret also would have been alerted by its third-party payment processing company. Many payment processors, including Chase Paymentech in 2010, sent email alerts directly to all merchants regarding FACTA's truncation requirement.  Without the benefit of discovery, it is unknown which third-party payment processors were utilized by Defendant.

---

[5]     RCI     Hospitality     Holdings,     Inc.,     Corporate     Directors, http://www.rcihospitality.com/investor/biodirectors.aspx (last visited Dec. 28, 2016).
[6] *See*, *supra* footnote No.4; *infra* footnote No. 7.

41.     More so than most companies, RCI Hospitality was held to higher standards to prevent identity theft.  In fact, in April 2013, the Securities and Exchange Commission (SEC) adopted joint rules with the Commodity Futures Trading Commission (CFTC) that require broker-dealers, mutual funds, investment advisers, and certain other entities defined as "financial institutions" or "creditors" regulated by the SEC and CFTC to adopt programs to prevent identity theft.[7]  RCI Hospitality is registered with the SEC and subject to its regulations.  The so-called "Red Flags Rule" requiring the aforementioned institutions and creditors to establish reasonable policies and procedures for the implementation of the Commissions' guidelines, became effective May 20, 2013, and compliance was required by November 20, 2013.

### C. *Defendant's Misdeeds*

42.     At all times relevant herein, Defendants were acting by and though their agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants.

43.     At all times relevant herein, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was in willful and reckless disregard for federal law and the rights of the Plaintiff.

44.     It is Defendants' policy and procedure to issue an electronically printed receipt to individuals at the point of sale – *i.e.*, immediately upon receipt of credit card payment.

45.     Consistent with Defendants' policy and procedure, Defendants knowingly and intentionally includes more than the last 5 digits of the card number on its electronically printed receipts.

---

[7] Commodity Futures Trading Commission and Securities and Exchange Commission, *Joint final rules and guidelines*, https://www.sec.gov/rules/final/2013/34-69359.pdf.

46.     The digits appearing on the receipt are not printed accidentally; the equipment and software used to print the receipts and electronically store an image of same must be programmed to display certain information, and likewise, programmed not to display certain information.

47.     Notwithstanding the fact that it has had years to comply, Defendants continue to issue point of sale receipts, which contain more than the last 5 digits of the card number, in direct violation of the Receipt Provision of the FCRA.

48.     Notwithstanding the Receipt Provision, Defendants continue to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts which do not comply with the FCRA.

49.     Notwithstanding the fact that Defendants had years to comply with FACTA's requirements, Defendants continue to act in conscious disregard for the rights of others.

50.     To paraphrase the words of Judge Richard Posner in *Redman v. RadioShack Corp.*, --- F.3d ----, 2014 WL 4654477 (7th Cir. Sept. 19, 2014), Defendants have been engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known…" *Id.* at \*2.

## V.     *CLASS ACTION ALLEGATIONS*

51.     This action is also brought as a Class Action under Fed. R. Civ. P. 23.  Plaintiff proposes the following class, defined as follows, subject to modification by the Court as required:

> *(i) All persons in the United States (ii) who, when making payment for goods or services at one of RCI Hospitality Holdings, Inc.'s subsidiaries across the country (iii) made such payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed*

*more than the last 5 digits of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint.*

52.     The named Plaintiff falls within the class definition and is a member of the class. Excluded from the class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

### A. *Certification Under Either Rule 23(b)(2) or (b)(3) is Proper.*

53.     The members of the class are capable of being described without managerial or administrative problems.   The members of the class are readily ascertainable from the information and records in the possession, custody or control of Defendants or third party credit card issuers.

54.     Defendants operate adult entertainment clubs throughout the United States. Therefore, it is reasonable to conclude that the class is sufficiently numerous such that individual joinder of all members is impractical.  The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The Class can be identified through Defendants' records or Defendants' agents' records.

55.     There are common questions of law and fact that predominate over any questions affecting only the individual members of the class.  The wrongs alleged against Defendants are statutory in nature and common to each and every member of the putative class.

56.     This suit seeks only statutory damages and injunctive relief on behalf of the class and it expressly is not intended to request any recovery for personal injury and claims related

thereto.  Plaintiff reserves the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

57.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.   The questions of law and fact to the class predominate over questions that may affect individual class members, including the following:

a.     Whether, within the two years prior to the filing of this Complaint, Defendants and/or their agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt upon which more than the last 5 digits of the card number was printed;

b.     Whether Defendants' conduct was willful and reckless;

c.     Whether Defendants are liable for damages, and the extent of statutory damages for each such violation; and

d.     Whether Defendants should be enjoined from engaging in such conduct in the future.

58.     As a person that purchased goods and/or services from Defendants and received a receipt upon which more than the last 5 digits of the card number were printed, Plaintiff is asserting claims that are typical of the proposed class.   Plaintiff will fairly and adequately represent and protect the interests of the class in that Plaintiff has no interests antagonistic to any member of the class.

59.     The principal question is whether the Defendants violated section 1681c(g) of the FCRA by providing class members with electronically printed receipts in violation of the Receipt Provision.   The secondary question is whether it is Defendants' policy and practice to provide such electronically printed receipts to consumers that make payment using a credit or debit card,

despite the advice of one of the nation's largest law firms, and whether it was Defendants' policy and practice to print receipts bearing more than the last 5 digits of consumer credit cards is willful noncompliance of the FCRA.

60.     Plaintiff and the members of the class have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct. Absent a class action, the class will continue to face the potential for irreparable harm.  In addition, these violations of law would be allowed to proceed without remedy and Defendants would undoubtedly continue such illegal conduct.  Because of the size of the individual class members' claims, few class members could afford to seek legal redress for the wrongs complained of herein.

61.     Defendants' defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories.  There are no unique defenses to any of the class members' claims.

62.     A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendants to comply with federal law. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small.  The maximum statutory damages in an individual action for a violation of this statute are minimal.   Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

63.     Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

### _COUNT I – VIOLATIONS OF 15 U.S.C. § 1681(c)(g)_

64.     15 U.S.C. §1681c(g) states as follows:

> *Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

65.     This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

66.     Defendants employ the use of said Devices for point of sale transactions at the various locations of Defendants.

67.     On or before the date on which this complaint was filed, Plaintiff and members of the class were provided receipt(s) by Defendants that failed to comply with the Receipt Provision.

68.     At all times relevant to this action, Defendants were aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

69.     Notwithstanding the three year period to prepare for FACTA and its accompanying provisions, including but not limited to the Receipt Provision; knowledge of the Receipt Provision and FACTA as a whole; Defendants knowingly, willfully, intentionally, and/or recklessly violated and continue to violate the FCRA and the Receipt Provision.

70.     As a result of Defendants' willful violations of the FCRA, Plaintiff and members of the class continue to be exposed to an elevated risk of identity theft. Defendants are liable to Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiff YAZAN SALEH respectfully requests that this Court enter judgment in his favor and the class, and against Defendants MIAMI GARDENS SQUARE ONE, INC. D/B/A TOOTSIE'S CABARET and RCI HOSPITALITY HOLDINGS, INC. for:

15

a.    Statutory damages;

b.    Punitive damages;

c.    Injunctive relief;

d.    Attorneys' fees, litigation expenses and costs of suit, and

e.    Such other and further relief as the Court deems proper under the circumstances.

## JURY DEMAND

**Plaintiff demands a trial by jury on all counts.**

Dated: January 1, 2017

Respectfully submitted,

By: /s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
scott@scottdowens.com

Jibrael S. Hindi, Esq.
THE LAW OFFICE OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street
Ft. Lauderdale, FL 33301
Telephone: (954) 907-1136
Facsimile: (855) 529-9540
jibrael@jibraellaw.com

BRET L. LUSSKIN, Esq.
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Ste. 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

*Attorneys for Plaintiff*
16