**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISON**
Case No. 17-20001-CIV-MARTINEZ-GOODMAN

YAZAN SALEH, individually and on behalf of
all others similarly situated,

      Plaintiff,

v.

MIAMI GARDENS SQUARE ONE, INC.
D/B/A TOOTSIE'S CABARET,
a Florida corporation, and RCI HOSPITALITY
HOLDINGS, INC., a Texas Corporation,

      Defendants.
_____/
MIAMI GARDENS SQUARE ONE, INC.
d/b/a TOOTSIE'S CABARET, a Florida
corporation, and RCI HOSPITALITY
HOLDINGS, INC., a Texas corporation,
Defendants/Counter-Plaintiffs,

v.

SVCLV, LLC, an Idaho Limited Liability
Company, and FREEDOMPAY INC., a
Pennsylvania Corporation,
Counter-Defendants,
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**MOTION FOR CLASS CERTIFICATION**

      Plaintiff, Yazan Saleh, submits this motion and memorandum of law in support of class certification.[1] For the following reasons, Plaintiff respectfully requests that this Court enter an Order certifying this case to proceed as a class action.

_____

[1]      Despite being served with Summons and Complaint on January 6, 2017, [ECF No. 6], Defendants waited until July 27, 2017 to seek dismissal of this action and have requested a stay during the pendency of that motion. [ECF No. 52]. Furthermore, RCI Hospitality Holdings, Inc. ("RCI") has taken the position that it does not need to provide substantive responses to Plaintiff's discovery requests, or comply with Magistrate Judge Goodman's Post-Discovery Hearing Administrative Order, [ECF No. 47], while the Court considers its Motion to Dismiss, [ECF No.

## I.     INTRODUCTION

Defendants, Miami Gardens Square One, Inc. ("MGSO") and RCI Hospitality Holdings, Inc. ("RCI"), systematically and willfully violated one of this Nation's most fundamental consumer protections against identity theft. Defendants printed the first six and last four digits of their customer's credit and debit card account numbers – nearly two thirds of the digits – on electronically printed, point of sale receipts at their chain of establishments. This case is ideal for class certification. Numerous courts have certified similar Fair and Accurate Credit Transactions Act ("FACTA") cases, including Judge Cohn in *Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383 (S.D. Fla. 2015). Like *Legg*, here the proposed class has numerous people with the same relatively small claim for statutory damages. Each claim raises the same material issues and the case covers a manageable six-month time period (July 5, 2016 through January 4, 2017). Also, there is no difficulty ascertaining the class because, as in *Legg*, Defendants' violation of FACTA was systematic. Defendants' contracted with third-parties, SVCLV, LLC ("SVCLV") and Freedompay, Inc. ("Freedompay"), "to take full responsibility to produce and make all decisions relating to hardware, software, programming and support services for electronic devices to process point of sale transactions related to credit cards." [ECF No. 11, ¶ 10].[2] Defendants' outsourced their obligations under federal law then failed to lift a finger to monitor their vendors, and as a result systematically exposed their customers to an increased risk of identity theft by

---

52], and Objections to the Administrative Order, [ECF No. 49]. Similarly, Defendant Miami Gardens Square One, Inc. has refused to provide witnesses for deposition during the pendency of the Motion to Dismiss. Although Plaintiff has scheduled another hearing to attempt to compel Defendants to participate in discovery, [ECF No. 53], their dilatory conduct and contempt for this Court's orders have prejudiced Plaintiff's efforts to obtain information pertinent to class certification. In particular, Plaintiff has been denied a list of RCI's subsidiaries and whether they were printing receipts which violated FACTA, as ordered by Magistrate Judge Goodman in [ECF No. 47], and has received responses to his Interrogatories, Requests for Production, and Requests for Admission from RCI which consist almost entirely of objections. Plaintiff has endeavored to respect this Court's Scheduling Order, [ECF No. 20], by filing this Motion for Class Certification by the deadline; however, to the extent this Court finds that additional information from RCI is necessary to fully and fairly evaluate this Motion, Plaintiff respectfully requests that the Court deny this Motion without prejudice and grant leave to re-file at such time as the discovery disputes identified above have been resolved.

[2]      Defendants' Third Party Complaint defines both MGSO and RCI collectively as "Tootsie's," *Id.* at ¶ 4-5, and alleges that SVCLV and Freedompay were responsible for the failure to properly truncate Defendants' customers' credit and debit card information.

putting almost two-thirds of their credit and debit card account numbers on a slip of paper that most people casually discard.[3]

Accordingly, Plaintiff seeks an order from this Court certifying a Class of individuals for whom, like Plaintiff, RCI subsidiaries printed a credit/debit card receipt that revealed the first six digits of the proposed class member's credit or debit card. Specifically, Plaintiff respectfully requests certification of a class defined as:

> *(i) All persons in the United States (ii) who, when making payment for goods or services at one of RCI Hospitality Holdings, Inc.'s subsidiaries across the country (iii) made such payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed more than the last 5 digits of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint to the date of class certification.*

The proposed Class easily meets the requirements for class certification set by Federal Rule of Civil Procedure 23. Therefore, this Motion should be granted.

## II.    LAW AND FACTS

### a.    FACTA's "Truncation" Requirement.

FACTA was passed by Congress and signed into law in 2003. [ECF No. 1, Complaint, ¶9]. One of FACTA's primary purposes is to reduce the risk of identity theft. *Id.*; *see also Redman v. Radioshack Corp.*, 768 F.3d 622, 639 (7th Cir. 2014) ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it."). Another primary purpose is the protection of the privacy of cardholders' account information. *Creative Hospitality Ventures v. U.S. Liab. Ins. Co.*, 655 F.Supp.2d 1316, 1333-34 (S.D. Fla. 2009), *rev'd in part on other grounds*, 444 Fed. App'x 370 (11th Cir. 2011). The importance of FACTA's privacy protection provisions are highlighted by recent studies that suggest that "when consumers pay for purchases today… 42 percent use debit cards and 38 percent use credit cards, while only 17 percent use cash and 3 percent use checks."[4] Furthermore, as indicated by the 2013 Federal

---

[3]     When President George W. Bush signed FACTA into law he stated: "this law will help prevent identity theft before it occurs, by requiring merchants to delete all but the last five digits of a credit card number on store receipts.... Slips of paper that most people throw away should not hold the key to their savings and financial interests." Remarks by the President at Signing of the Fair and Accurate Credit Transactions Act, 2 Pub. Papers 1676 (Dec. 4, 2003).

[4]     "Credit Cards are the Preferred Payment Method: Survey", http://nypost.com/2015/07/12/credit-cards-are-the-preferred-payment-method-survey/ (Last accessed: July 7, 2017) (emphasis added).

Reserve Payments Study, non-cash payments are on the rise as "payments have become increasingly card-based -- with the number of debit card payments rising more than any other payment system between 2009 and 2012."[5]

To accomplish its goals of reducing the risk of identity theft and protecting cardholder privacy, FACTA requires merchants to redact certain information an identity thief might otherwise find and use from debit and credit card transaction receipts; in particular, the card expiration date and most of the account number. *Redman*, 768 F.3d at 626 ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information."). Specifically, FACTA states that:

> (g)     Truncation of credit card and debit card numbers
> (1)     In general. Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print ***more than the last 5 digits of the card number or the expiration date*** upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. §1681c(g)(1) (emphasis added). This provision is commonly known as the "truncation requirement."

Given the simplicity of the truncation requirement, as well as the inherent commonality of claims that arise when a merchant systematically violates it (as here), and the relatively small potential damages available to each class member, FACTA truncation cases are commonly certified for class treatment. *See, e.g.*, *Bush v. Calloway Consol. Group River City, Inc.*, No. 10-cv-841, 2012 U.S. Dist. LEXIS 40450 at *33 (M.D. Fla. Mar. 26, 2012) ("Courts routinely find class resolution superior in consumer protection actions, including those brought pursuant to FACTA."); *In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. 347, 376 (C.D. Cal. 2013) ("The vast majority of courts outside this district have similarly found that common questions predominate in FACTA class actions.").[6]

---

[5]     "Are Cash Transactions Becoming Extinct?" http://www.cbsnews.com/news/are-cash-transactions-becoming-extinct/ (Last Accessed: July 7, 2017).
[6]     Examples of the numerous decisions ruling class certification is proper in FACTA truncation cases include *Velasco v. Sogro, Inc.*, No. 08 C 244, 2014 U.S. Dist. LEXIS 104047 at *11-*12 (E.D. Wisc. July 30, 2014); *Rogers v. Khatra Petro, Inc.*, 08-cv-294, 2010 U.S. Dist. LEXIS 103599 at *2 (N.D. Ind. Sept. 29, 2010); *Miller-Huggins v. Mario's Butcher Shop, Inc.*,

4

Indeed, several courts in this District have recently certified FACTA cases for class treatment in contested proceedings as well as part of class wide settlements. *See Flaum v. Doctor's Assoc., Inc.,* No. 16-cv-61198-CMA, ECF No. 83 (S.D. Fla. March 23, 2017) (granting preliminary approval of FACTA class settlement); *Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383 (S.D. Fla. 2015) (contested); *Legg v. Lab. Corp. of Am. Holdings*, 14-61543- CIV-Rosenberg/Brannon, 2016 U.S. Dist. LEXIS 122695 (S.D. Fla. Feb. 18, 2016) (settlement); *Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD, 2016 U.S. Dist. LEXIS 133695 (S.D. Fla. Sept. 28, 2016) (settlement); *Wood v. J Choo USA, Inc.*, Case No. 15-cv-81487, DE 97 (S.D. Fla. May 9, 2017) (settlement).

      b.    **The Truncation Requirement Is Well-Established.**

Defendants had years to learn about and comply with the truncation requirement before it went into effect. Although FACTA was enacted in 2003, merchants were given ample time to comply, as they were not obligated to start meeting the truncation requirement until December 4, 2006. 15 U.S.C. §1681c(g)(3). Moreover, the truncation requirement was highly-publicized long before its effective date.[7] Thereafter, VISA, MasterCard and American Express began to contractually require merchants to comply with the truncation requirement. [ECF No. 1, ¶15-¶16].[8]

---

No. 09-3774, 2010 U.S. Dist. LEXIS 16493 at \*14 (N.D. Ill. Feb. 22, 2010); *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 259 F.R.D. 151, 161 (N.D. Ill. 2009); *Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82, 90 (N.D. Ill. 2008); *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, 293 (N.D. Ill. 2008); *Meehan v. Buffalo Wild Wings, Inc.*, 249 F.R.D. 284, 288 (N.D. Ill. 2008); and *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 217 (N.D. Ill. 2008). There are also other recent decisions of preliminary and final approval of FACTA classes, including *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-cv-2578-DHB, 2017 U.S. Dist. LEXIS 75439 (S.D. Cal. May 15, 2017) and Har*rper v. Law Office of Harris & Zide LLP*, No. 15-cv-01114-HSG, 2017 U.S. Dist. LEXIS 37367, at \*6 (N.D. Cal. Mar. 15, 2017).

[7]    For example, on March 6, 2003, the CEO of Visa USA announced "an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether…." [ECF No. 1, ¶14], *quoting PR Newswire*, "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein" (March 6, 2003)). And, within twenty-four hours after the VISA announcement, MasterCard and American Express announced they were imposing similar requirements. (*Id.*).

[8]    For example, the 2006 edition of "Rules for Visa Merchants" (p.62), which is distributed to and binding upon all merchants that accept VISA cards, expressly provides that "only the last

The truncation requirement made news again in 2008, after numerous merchants were sued for violating the "expiration date" element of the requirement. *See Bateman v. Am. Multi-Cinema*, 623 F.3d 708, 717 (9th Cir. 2010). Congress addressed this situation by passing a "Clarification Act" to absolve a specific type of violation that had occurred *before* June 3, 2008. *Id.* Importantly, however, the Clarification Act did *not* eliminate or otherwise absolve any violation of truncation requirement going forward. Thereafter, card-processing companies continued to alert merchants about FACTA's truncation requirements.[9]

To incentivize merchants to learn about and comply with FACTA, and encourage private litigants to enforce it, Congress gave the law teeth. Specifically, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq*. ("FCRA"), which entitles a successful plaintiff to statutory damages, punitive damages, costs and attorneys' fees for any "willful" conduct that violates the law. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306-1307 (11th Cir. 2009), *citing* 15 U.S.C. §1681n(a)(1)(A), and (2). This includes knowing or reckless conduct, such as when a defendant violates the statute despite being aware of its requirements. *See Harris*, 564 F.3d at 1310, *citing Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59-60 (2007) (an FCRA violation is "willful" if it is knowing or reckless); and *Steinberg v. Stitch & Craft, Inc.*, No. 09-60660, 2009 U.S. Dist. LEXIS 72908, *9 (S.D. Fla. Aug. 18, 2009) (a complaint states claim for willful violation under FACTA if the defendant violated statute despite knowing its requirements).

Finally, Defendants were no doubt well aware of FACTA's requirements. [ECF No. 1, ¶36-38]. RCI's Director Steven L. Jenkins, is a member of the American Institute of Certified Public Accountants ("AICPA"), which has published at least two articles concerning the need to comply with FACTA to prevent identity theft. [*Id.* at ¶38]. The law is well settled that the knowledge of a corporation's directors may be imputed to the corporation. *Beck v. Deloitte &*

---

four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." [ECF No. 1, ¶17].

[9]     A Visa Best Practice Alert in 2010 stated "Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing … the card expiration date on any cardholder receipt." [ECF No. 1, ¶20]. Likewise, MasterCard warned merchants that: "A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card Expiration Date." [Id. at ¶21].

*Touche*, 144 F.3d 732, 736 (11th Cir. 1998); *In re Hellenic Inc.,* 252 F.3d 391, 395 (5th Cir. 2001) (noting that "courts generally agree that the knowledge of directors or key officers, such as the president and vice president, is imputed to the corporation").

>      c.      **Defendants Subjected Plaintiff and the Proposed Class to a Pattern of Identical Violations of FACTA's Truncation Requirement.**

Despite the significant publicity surrounding FACTA's truncation requirement, Defendants violated the statute on a widespread basis. MGSO has produced records which show that a total of 77,844 credit card transactions took place at a single establishment during the period it's equipment was programmed to print receipts showing ten digits of customers' credit and debit card numbers. *See* Exhibit 1, Supplemental Response to First Request for Production of Documents, and Exhibit 2, Credit Card Audit. Thus, even if only one RCI subsidiary violated FACTA, which is highly unlikely given that RCI is willing to stand in contempt of court to avoid disclosing whether its other subsidiaries were similarly affected, certifying the class would still be appropriate.

>      III.      **THE CLASS MEETS ALL REQUIREMENTS FOR CERTIFICATION**

Class certification is a matter for the Court's discretion. *DeLeon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1218 (11th Cir. 2007). The class should be certified if it is "ascertainable," and if the class meets the four requirements of Rule 23(a), and at least one subsection of Rule 23(b). *See Carriuolo v. G.M. Co.*, 823 F.3d 977, 984-85 (11th Cir. 2016), *citing* Fed. R. Civ. P. 23.

Ascertaining the class is not difficult because membership is based on objective criteria (electronically-recorded card transaction data), and requires no significant individual inquiry. *See*, *e.g.*, *Legg*, 315 F.R.D. at 387-88 ("[Defendant's] responses to [Plaintiff's] discovery requests indicate that its records will identify those to whom [Defendant] issued the offending receipts."). MGSO has already produced records of 77,844 transactions which resulted in FACTA violations, and these records include the names of the individuals, albeit with those names redacted. *See* Exhibit 2. Additionally, MGSO's records contain "the date of the transaction, the transaction authorization code, type of card used in the transaction and the PAN of the card used in the transaction."[10] Exhibit 3, MGSO Response to Interrogatories, at

---

[10]      PAN is an acronym for "Primary Account Number" i.e. the "card number" on either a credit or debit card.

Interrogatory No. 2. This wealth of information can be used to issue a subpoena to First Data[11] to establish the bank which issued each class member's credit or debit card. Then, Plaintiff can issue subpoenas to the banks to determine class members' contact information. This is a straightforward process that Plaintiff's counsel has successfully executed in other FACTA cases. *See e.g. Legg v. Spirit Airlines, Inc.*, Case No. 0:14-cv-61978, DE 146 at p. 14, (S.D. Fla. July 11, 2016) (describing process of issuing subpoenas to credit card processors and banks to locate class members); *Muransky v. Godiva Chocolatier, Inc.*, Case No. 0:15-cv-60716, DE 74 at p. 12 (S.D. Fla., Sept. 12, 2016) (Same). As the identity of individual class members can be determined through reference to objective criteria, the class is ascertainable.

Next, the four requirements of Rule 23(a) are: (i) the class is so numerous that joinder of all members would be impracticable (numerosity); (ii) the class members' claims present common questions of law or fact (commonality); (iii) Plaintiff's claim is typical of the class members' claims (typicality); and (iv) Plaintiff and his counsel are adequate representatives of the class (adequacy). *See* Fed. R. Civ. P. 23(a); *DeLeon-Granados*, 497 F.3d at 1220.

The part of Rule 23(b) at issue here is subsection (3). It requires: (i) that the common questions of law or fact "predominate" over any questions that affect only individual class members, and (ii) that a class action is a superior method for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); *DeLeon-Granados*, 497 F.3d at 1220. As explained below, the proposed class meets all Rule 23 requirements.[12] Accordingly, Plaintiff is entitled to class certification. *See Shady Grove Orthopedics Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule *entitling* a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.") (Emphasis added).

## A.    The Class Meets the Numerosity Requirement – Rule 23(a)(1)

The test for numerosity is that "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no "definite standard" for satisfying this

---

[11]    MGSO identified First Data as the company which processed credit and debit card transactions. Exhibit 3 at Interrogatory No. 6.

[12]    The class certification decision is generally made apart from deciding the merits. "[A] court should not determine the merits of a claim at the class certification stage." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009). Instead, courts should only consider the merits "to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Id.*, quoting *Heffner v. BSBC of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006).

requirement in terms of how large the class must be, and "plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983); *see also Legg*, 315 F.R.D. at 388 ("Parties seeking class certification do not need to know the 'precise number of class members…'"); and *Fabricant v. Sears Roebuck, et al.*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) ("There is no definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable."), *citing Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). A class size of "more than forty" is generally adequate. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1983).

The proposed class here easily satisfies this low burden. RCI's subsidiary MGSO produced records for 77,844 transactions where it printed a receipt that violates FACTA. Exhibit 2, p. 3542. Furthermore, an earlier and less complete set of credit card transaction records served with MGSO's Responses to Interrogatories contained names and redacted credit card numbers which showed that at least thousands of unique individuals received receipts that violate FACTA. *See* Exhibit 3 at Interrogatory No. 2. Thus, at a single RCI subsidiary more than enough individuals received FACTA violative receipts to satisfy numerosity. As discovery progresses the number of class members will likely increase. Accordingly, the numerosity requirement is met.

    **B.**      **The Class Meets the Commonality Requirement – Rule 23(a)(2)**

The test for commonality is whether the class claims present "questions of law *or* fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added). This is another "low hurdle." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Plaintiff need only show that the class claims present "at least one issue whose resolution will affect all or a significant number of the putative class members," or that their claims "are susceptible to class-wide proof." *Id.* at 1355, *quoting Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); *see also Legg*, 315 F.R.D. at 389 (same), *citing Williams*, 568 F.3d at 1355.

Here, the class claims present several issues affecting each class member. For instance, whether RCI required its subsidiaries to use the services of SVCLV, Inc. and is vicariously liable for FACTA violations which occurred because of the use of SVCLV's software. Additionally, whether Defendants acted willfully such that class members may recover statutory and punitive is an issue which affects all class members.

These issues turn on class-wide proof. For example, the evidence as to the functioning of SVCLV's system is uniform. Likewise, common evidence establishes Defendants' failure to test its payment systems for FACTA compliance. *See e.g.,* Exhibit 3 at Interrogatory No. 3 ("The reason for alleged non-compliance was reliance on third parties, . . . for the installation and maintenance of all credit transaction equipment."). Totally abdicating its responsibilities to comply with Federal law and never so much as looking at the receipts Defendants were printing go to establish that Defendants' actions were "reckless" and therefore willful. *See Harris*, 564 F.3d at 1310, *citing Safeco*, 551 U.S. at 59-60 (violation is "willful" if it is knowing or reckless). Accordingly, the class easily meets the commonality requirement. *See Legg*, 315 F.R.D. at 389; *see also Bush*, 2012 U.S. Dist. LEXIS 40450 at *21 ("courts considering whether to certify a FACTA class action on facts similar to those presented here have routinely found commonality.")

## C.     Plaintiff's Claims Are Typical of the Class's Claims – Rule 23(a)(3)

The typicality element of Rule 23 simply requires that Plaintiff's and the class members' claims "arise from the same event or pattern or practice and are based on the same legal theory." *Williams*, 568 F.3d at 1356-57, *quoting Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216-17 (11th Cir. 2012).

That is the case here because Plaintiff and the proposed class were subjected to the same conduct, and their claims present the same legal theory. Plaintiff received transaction receipts that displayed the first six and last four digits of his credit card number. The system which printed Plaintiff's receipts was used to print all of the putative class members' receipts as well and generated identical FACTA violations for each one. [ECF No. 11, ¶ 10]. *See also* Exhibit 3 at Interrogatory No. 3. "On this basis alone courts have found typicality exists." *Bush*, 2012 U.S. Dist. LEXIS 40450 at *25, *citing Shurland*, 259 F.R.D. at 159; *Legg,* 315 F.R.D. at 389 ("[Plaintiff]'s claims are typical of those of the proposed class. [Plaintiff]'s and the class members' claims both arise from [Defendant]'s practice of inadequately truncating customers' credit and debit card numbers on those customers' receipts."). Accordingly, Plaintiff meets the typicality requirement.

## D.     Plaintiff and His Counsel Meet the Adequacy Requirement – Rule 23(a)(4)

The adequacy element of Rule 23(a)(4) requires that Plaintiff and his counsel be able to

"fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means Plaintiff must have "no interests antagonistic to the class," and his counsel must be qualified to represent the class. *Fabricant*, 202 F.R.D. at 314-15, *citing Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987); *see also Carriuolo*, 823 F.3d at 989 ("[A] party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy.") (citation omitted).

Plaintiff meets this test because his interests are squarely aligned with the class. Like the class members, he claims Defendants violated his rights under FACTA by printing a card transaction receipt that reveals the first six digits of his card account number, that Defendants acted willfully (*i.e.* knowingly or recklessly), and thus that Defendants are liable for statutory damages, punitive damages, costs and attorneys' fees. [ECF No. 1]. Plaintiff understands he has a duty to the class members and seeks to stop this conduct from happening again, as well as to obtain a recovery for the class by, among other things, assisting his counsel with discovery, sitting for any deposition, attending any mediation or trial, and communicating with his counsel about the case. *See* Exhibit 4 (Saleh Declaration) at ¶9). Plaintiff also has no interests antagonistic to the class, let alone a "fundamental one, going to the specific issues in controversy." *Carriuolo*, 823 F.3d at 989.

Plaintiff's attorneys are also adequate. Scott D. Owens, P.A. and Bret Lusskin, P.A. have been found adequate and appointed class counsel in four prior FACTA class actions in this District alone, as well as numerous other class action cases. *See Legg*, 315 F.R.D. at 390 ("The Court has no cause for concern … Plaintiff's attorneys are experienced and capable, and have served as class counsel in similar consumer class actions before."). *Muransky*, 2016 U.S. Dist. LEXIS 133695 at *7 ("Class Counsel effectively pursued the Settlement Class Members' claims before this Court"); *Guarisma v. Microsoft Corporation*, 15-cv-24326-CMA, DE 57, ¶5 (S.D. Fla. Feb. 28, 2017) ("the Court determines that Plaintiff's counsel, Scott D. Owens, Keith J. Keogh, Michael S. Hilicki, Bret L. Lusskin, and Patrick Crotty, are adequate to represent the Class and appoints them Class Counsel."); *Flaum*, 16-cv-61198-CMA, Doc. 83, p.3, ¶6 (same); *Legg v. Lab. Corp. of Am.*, No. 14-61543-CV, 2016 WL 3944069 at *2 (S.D. Fla. Feb. 18, 2016. Exhibit 5 (Owens Declaration); Exhibit 6 (Lusskin Declaration); Exhibit 7 (Hindi Declaration). They are well-respected members of the legal community who have extensive experience in the

area of consumer rights and class action litigation. They have litigated class action cases nationally, and have the resources necessary to conduct this litigation.

Plaintiff's counsel have diligently investigated and dedicated substantial time and resources to the investigation and prosecution of the class members' claims. To date this includes, but is not limited to, propounding written discovery, attending a discovery hearing to compel better discovery responses, briefing Defendant RCI's objections to the Post-Discovery Hearing Administrative Order, and setting another discovery hearing to address RCI's non-compliance with the Post-Discovery Hearing Administrative Order. In addition, Plaintiff's counsel have a track record for getting strong results for classes in FACTA cases, including the four largest all-cash, non-revisionary class action FACTA settlements in history.[13] This is more than sufficient. *See*, *e.g.*, *Fabricant*, 202 F.R.D. at 315 (plaintiff's counsel adequate because they "are experienced in class action litigation."). Plaintiff and his counsel meet the adequacy requirement.

### E.     The Class Meets the Requirements of Rule 23(b)(3)

Once the elements of Rule 23(a) are met, the proposed class need only meet one of the three subsections of Rule 23(b). *Carriuolo*, 823 F.3d at 984. Here, the class should be certified under subsection (b)(3), which provides that a class action may be maintained where "the questions of law **_or_** fact common to class members predominate over any questions affecting only individual members," and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Williams*, 568 F.3d at 1357, *quoting* Fed. R. Civ. P. 23(b)(3) (emphasis added). As shown below, this case easily meets both requirements.

#### 1.  Common Question of Law or Fact Predominate

Common issues of law or fact predominate "if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to … relief." *Williams*, 568 F.3d at 1357, *quoting Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004); *see also Carriuolo*, 823 F.3d at 985 (common question predominates when they

---

[13] *See Flaum v. Doctor's Assoc., Inc.,* No. 16-cv-61198-CMA, ECF No. 83 (S.D. Fla. March 23, 2017) (granting preliminary approval of FACTA class settlement of $30.9 million for 2.6 million class members); *Legg v. Lab Corp.*, 14-61543-CIV, Doc. 205, pp. 1, 9 ($11 million dollars for 635,000 class members); *Legg v. Spirit Airlines. Inc.*, 14-cv-61978-JIC, Doc. 146, pp. 4-6 ($7.5 million for 350,000 class members); *Muransky*, 2016 U.S. Dist. LEXIS 133695 at *5 ($6.3 million dollars for 318,000 class members) (on appeal).

have a direct impact on class members' effort to establish liability that is more substantial than individualized inquires) (citation omitted); and *Legg*, 315 F.R.D. at 391 (same).[14] That is the case here because the common questions this case presents, which are listed in the discussion of Rule 23(a)(2)'s "commonality" element above, directly affect the class members' ability to establish liability and obtain relief.

Specifically, the issue of whether Defendants violated FACTA by systematically printing credit and debit card receipts that reveal the first six digits of purchaser's account numbers directly impacts each class member's ability to establish liability because a "yes" to that question resolves the liability issue. *See* 15 U.S.C. §1681c(g); *see also Legg*, 315 F.R.D. at 391 ("Plaintiff argues that he satisfies Rule 23(b)(3)'s predominance requirement because all the putative class members' claims stem from the same programing error ... The court agrees that these central issues predominate..."); and *Rogers*, 2010 U.S. Dist. LEXIS 103599 at *15 ("one common legal issue predominates in this case — whether the receipts printed by Defendants violate 15 U.S.C. §1681c(g).")

Likewise, the question of whether Defendants acted willfully directly impacts each class member's right to relief because the complaint only seeks statutory and punitive damages, and that relief is only available if MGSO and RCI acted willfully. 15 U.S.C. §1681n; *see also Bush*, 2012 U.S. Dist. LEXIS 40450 at *32 ("whether Calloway's noncompliance with FACTA was 'willful' applies to all class members' claims."), *citing Shurland*, 259 F.R.D. at 159.

By contrast, this case does not raise any significant individual issues among class members, let alone any so material that they could predominate over the common questions.[15]

---

[14]   Note, Rule 23(b)(3) does not require all issues to be common among the class. It only requires that common issues predominate over any individual issues. *Klay*, 382 F.3d at 1254 ("it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions."), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *see also Carriuolo*, 823 F.3d at 988 ("Nothing in this Rule requires plaintiffs to prove predominance separately as to both liability and damages.").

[15]   Some defendants have argued that FACTA cases present individual questions about whether the class members used a "business" credit card in the transactions giving rise to their claims. This is a non-issue because FACTA does not ask if a business owns the card used. *Shurland*, 259 F.R.D. at 160 ("FACTA's protections thus extend to holders of both business and consumer credit cards."). Accordingly, this alleged issue cannot defeat class certification. *See In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. at 377.

Thus, as is typical in FACTA cases, the instant case easily meets the predominance requirement. *See In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. at 376 ("The vast majority of courts outside this district have similarly found that common questions predominate in FACTA class actions.")

### 2.   A Class Action Is a Superior Method of Resolving This Matter

"Courts routinely find class resolution superior in consumer protection actions, including those brought pursuant to FACTA." *Bush*, 2012 U.S. Dist. LEXIS 40450 at \*33-\*34, *citing*, *inter alia*, *Matthews*, 248 F.R.D. at 216 ("FACTA claims are especially well-suited to resolution in a class action…."). This case is no different.

A class action is superior to individual actions here because it promotes efficiency and judicial economy. Resolving the common questions presented by the class members' FACTA claims in one lawsuit requires far fewer judicial resources than requiring potentially thousands of individual lawsuits to repeatedly decide the same questions over and over. *See Legg*, 315 F.R.D. at 392 ("The Court will not preside over hundreds of thousands of separate cases when one will do."); *Williams*, 568 F.3d at 1358 ("If a district court determines that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions."). Indeed, here, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983); *see also Carriuolo*, 823 F.3d at 989 ("class-wide adjudication appropriately conserves judicial resources and advances society's interests in judicial efficiency.").

A class action is also superior because it promotes justice and fairness. It ensures that consumer class members who do not know they have a claim, or who lack the ability or wherewithal to bring their own lawsuit, can vindicate their rights. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate…."). Moreover, in the unlikely event that any class members do "have a special interest in prosecuting their claims independently, they may opt out of the suit." *Legg*, 315 F.R.D. at 391.

By contrast, there is no legitimate benefit to denying class certification and thereby requiring each of the numerous class members to file their own individual lawsuit. In fact,

requiring individual class members to file their own suits would deter many from enforcing their rights because recoverable statutory damages are only $100-$1000 per person, and then only if they undertake the time-consuming and potentially cost-prohibitive effort to prove willfulness.  *See* 15 U.S.C. §1681n(a)(1)). This potential recovery may not provide a sufficient incentive to locate counsel, conduct discovery in multiple states, and endure "all the burdens of suing." *See Mace*, 109 F.3d at 344; *see also Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("the individual might be unable to obtain counsel to prosecute his action when the amount of individual damages is relatively small.") (citation omitted).

Indeed, the work to prosecute these cases and establish willfulness is substantial. Those of Plaintiff's counsel involved in *Legg. v. Lab. Corp.*, above, had to take approximately 20 depositions (including 4 experts) and review large amounts of document discovery, and the case did not settle until after a hearing on *Daubert* motions and summary judgment, and two mediations. Likewise, *Legg v. Spirit Airlines* required extensive document discovery, depositions (including a third-party software developer out of country), and the class was only certified over the defendant's objection. Finally *Flaum v. Doctor's Associates, Inc.* required significant document discovery, multiple expert and party depositions, *Daubert* motions, and two mediations.  Not many individuals can be expected to endure or find counsel to take on such efforts for $100-$1000 in statutory damages. A class action avoids this problem by aggregating what would otherwise be a series of "too small" potential individual recoveries. *See In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 659 (S.D. Fla. 2012) ("The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability."). Accordingly, this case meets the superiority requirement.

In short, because this case meets all of the requirements of Federal Rule 23, the class should be certified.

## IV.    CONCLUSION

As demonstrated above, FACTA cases are well suited for class action treatment, and this case is no exception. A certified class action will resolve numerous nearly-identical small claims in one efficient case. The class easily meets all of the requirements for class certification under Federal Rule 23. Accordingly, Plaintiff Yazan Saleh, individually and on behalf of the proposed class, respectfully requests that the Court certify the class, appoint him and his counsel class

representative and class counsel, respectively, and award all other and further relief that the Court deems equitable and just to conclude this matter.

Dated: August 7, 2017.

Respectfully submitted,

/s/ Scott D. Owens
Scott D. Owens, Esq.
Patrick C. Crotty, Esq.
Sean M. Holas, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com
patrick@scottdowens.com
sean@scottdowens.com

Jibrael S. Hindi, Esq.
THE LAW OFFICE OF JIBRAEL S.
HINDI, PLLC.
110 SE 6th Street
Ft. Lauderdale, FL 33301
Telephone: (954) 907-1136
Facsimile: (855) 529-9540
jibrael@jibraellaw.com

BRET L. LUSSKIN, Esq.
20803 Biscayne Blvd., Ste 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on August 7, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel of parties, if any, who are not authorized to receive electronically Notice of Electronic Filing.

By: */s/ Scott D. Owens*
    Scott D. Owens, Esq.