**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 17-20001-CIV-MARTINEZ-GOODMAN**

YAZAN SALEH, )
Individually and on behalf of all others similarly )
situated, )
)
Plaintiff, )
)
v. )
)
MIAMI GARDENS SQUARE ONE, INC, d/b/a )
TOOTSIE'S CABARET, *et al.*, )
)
Defendants. )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiff Yazan Saleh hereby responds in opposition to Defendant, RCI Hospitality Holdings Inc.'s (hereinafter "Defendant" or "RCI") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Stay, [ECF No. 52],[1] and states as follows:

**INTRODUCTION**

"Through FACTA, Congress created a substantive legal right for [] card-holding consumers [] to receive receipts truncating their personal credit card numbers and expiration dates and, thus, protecting their personal financial information." *Wood v. J Choo USA, Inc.*, 201 F. Supp. 3d 1332, 1340 (S.D. Fla. 2016). Defendants' violation of Plaintiff's substantive rights is a sufficient injury for purposes of Art. III standing because "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none

---

[1] Defendant Miami Gardens Square One, Inc. (hereinafter "MGSO") has joined RCI's Motion, [ECF No. 54].

1

existed before." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). Notwithstanding the fact that FACTA was enacted with the purpose of protecting consumers' *substantive* privacy rights, such a violation, even if viewed as procedural (which it is not), does not foreclose the possibility of concrete injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 606, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ("There is no room for a per se rule or presumption excluding injuries labeled 'procedural' in nature.").

Additionally, printing the credit or debit card information on a receipt exposes consumers to a real risk of identity theft, as recognized by the Congress itself. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information and thus be able to make purchases that the seller will think were made by the legitimate cardholder."). The Supreme Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) restated the well-established principle that an injury is "concrete" if is real or *de facto*, *i.e.*, not abstract. *Spokeo*, 136 S. Ct. at 1548. This includes both tangible harms and intangible harms. *Spokeo*, 136 S. Ct. at 1549. Accordingly, *Spokeo* recognizes that a "risk of real harm" can satisfy the concrete injury requirement. *Spokeo*, 136 S. Ct. at 1549. The elevated risk of harm does not need to be substantial, it is well established that an "identifiable trifle" is sufficient. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009). The inclusion of the first six digits of Plaintiff's card numbers on his receipts reduced the number of digits an identity thief would need to obtain thereby reducing the difficulty of guessing the card numbers in a way which can be calculated with mathematical precision. The fact that Plaintiff did not lose his receipts to identity thieves does not defeat standing. *See Havens Realty Corp. v. Coleman*, 455

2

U.S. 363, 374 (1982) ("That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d)."). Plaintiff has Article III standing to pursue this action and Defendants' Motion to Dismiss should be denied. Defendants further request a stay of discovery pending the resolution of the Motion to Dismiss. There exists no good cause to grant a stay under the circumstances of this case, and a stay of discovery would prejudice Plaintiff.

## BACKGROUND

Plaintiff visited one of Defendants' clubs on December 27, 2016. [ECF No. 1 ¶ 29]. On that occasion, Plaintiff purchased goods or services using two different personal credit cards and was provided two electronically printed receipts. Both receipts displayed the first six digits of his account number in violation of FACTA's requirements. *Id.* ¶ 30. The receipts also identify Plaintiff's card types as Visa, state his name as the card holder, and provide a variety of information about the transactions such as the server's first name. *See* Exhibit 1, redacted receipts.

Once Plaintiff discovered that the receipts were in violation of FACTA, infringing upon his privacy rights and exposing him to an elevated risk of identity theft, he filed the instant putative class action on January 1, 2017. *See id.* ¶¶ 25, 30, 70. Defendants filed a joint Answer and Affirmative Defenses and Third Party Complaint on February 3, 2017. [ECF No. 11]. The Parties conducted their in-person Joint Scheduling Conference and Fed. R. Civ. P. 26(f) Conference on February 21, 2017 and filed their Joint Scheduling Report on March 1, 2017. [ECF No. 18]. In their Report, the parties agreed to allow discovery into "all relevant topics at all times during the discovery period." *Id.* at p. 3. Defendant RCI reneged on its promise and refused

to produce any data pertaining to its subsidiaries and FACTA violations pertaining to the putative class, necessitating a discovery hearing before Magistrate Judge Goodman on June 23, 2017. [ECF No. 46].  Following the Discovery Hearing, Magistrate Judge Goodman issued an Administrative Order which required, *inter alia*, that RCI produce a two-column status report containing the names of all subsidiary clubs under the RCI umbrella and a "yes" or "no" as to whether each club issued any receipts in violation of FACTA for the period 2014 to the present. [ECF No. 47, p. 2]. RCI filed Objections to the Post-Discovery Hearing Administrative Order on July 10, 2017. [ECF No. 49]. RCI's Objections were fully briefed on July 27, 2017 and remain pending before the Court. [ECF No. 51]. Additionally, the RCI and Plaintiff conferred on discovery disputes regarding RCI's failure to comply with or request a stay of the Post-Discovery Hearing Administrative Order as well as objections in RCI's discovery responses, and have scheduled another Discovery Hearing for September 22, 2017. [ECF No. 53].

Despite the Parties ongoing discovery disputes, Plaintiff filed his Motion for Class Certification on August 7, 2017. [ECF No. 55]. Defendants' Responses are currently due August 21, 2017.

## ARGUMENT

Following seven months of intense litigation, with extensive discovery requests still pending, Defendants now assert that Plaintiff lacks standing to pursue this action, and seek a stay until the question is resolved. According to well-established principles of law, as illustrated by the Supreme Court in *Spokeo* and confirmed by the case law of this Circuit, Defendants' violation of FACTA invaded Plaintiff and the putative class members' substantive privacy rights and exposed them to an elevated risk of identity theft constituting a concrete injury sufficient to establish Article III standing.

Every court in the Eleventh Circuit to address the issue post-*Spokeo* has found Article III met in a FACTA case.[2]  *See Altman v. White House Black Mkt., Inc.*, No. 1:15-CV-2451-SCJ, 2016 WL 3946780, at *6 (N.D. Ga. July 13, 2016), *motion to certify appeal denied*, No. 1:15-CV-2451-SCJ, 2016 WL 9047107 (N.D. Ga. Oct. 13, 2016) (citing *Nicklaw v. Citimortgage, Inc.*, No. 15-14216, 2016 WL 5845682, at *3 (11th Cir. Oct. 6, 2016), and stating: "The *Nicklaw* opinion was issued after the conclusion of the parties' briefing of the 1292(b) motion and provides a contradiction to Defendant's statement that 'there is no basis to conclude that a mere risk of identity theft can translate a bare statutory violation into a 'concrete' injury for Article III standing purposes.'"); *Bouton v. Ocean Props.*, 201 F.Supp.3d 1341, 1352 (S.D. Fla. Aug. 15, 2016) ("As in *Guarisma*, the Court finds Plaintiff's injury is clearly particularized, as Plaintiff allegedly received a receipt that improperly included his personal credit card information. . . . And, consistent with *Guarisma* and for the reasons explained below, the Court finds Plaintiff's injury 'concrete,' as FACTA 'created a substantive right for individuals to receive printed receipts that truncate their personal credit card information, in order to decrease the ever-present threat of identity theft.'"); *Flaum v. Doctor's Assocs., Inc.*, 204 F. Supp. 3d 1337, 1342 (S.D. Fla. 2016), *motion to certify appeal denied*, No. 16-61198-CIV, 2016 WL 8677304 (S.D. Fla. Oct. 27, 2016); *Guarisma v. Microsoft Corp.*, 209 F. Supp. 3d 1261, 1267 (S.D. Fla. 2016) (holding that the FACTA created a substantive legal right for consumers to receive truncated printed receipts and that plaintiff had therefore standing); *Wood*, 201 F. Supp. 3d at 1340 .

---

[2] Notably, the case law Defendants cite to endorse their argument that a receipt in violation of FACTA does not cause concrete harm are outside this District and outside the Eleventh Circuit. [ECF No. 52 at 5-9].

In light of the governing principles of law and the case law within the Eleventh Circuit, Defendants' contention that Plaintiff commenced the action "in the absence of any injury whatsoever", [ECF No. 52 at 1], is both untrue and irrelevant – Plaintiff suffered a cognizable injury from the violation of his substantive statutory rights and suffered an increased risk of injury (identity theft) which is sufficient for Art. III standing.

### 1. The Violation of Plaintiff's Substantive FACTA Rights Itself Is a Concrete Injury.

*Spokeo* describes injury required for Art. III standing as "an invasion of a legally protected interest…" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). Also, *Spokeo* reaffirms that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580). The Court in *Spokeo* limited its comments to procedural rights because the case before it presented an alleged violation of procedural rights under the Fair Credit Reporting Act ("FCRA").[3] *See id.* at 1545 (citing, *inter alia*, 15 U.S.C. §1681e ("Compliance Procedures")). Accordingly, the *Spokeo* majority did not discuss violations of *substantive* rights.

Justice Thomas's concurrence fills this gap, confirming that in the context of substantive or "private" rights, the violation alone is enough to meet the concrete injury requirement:

> In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy.
> * * *
> A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right. See *Havens Realty Corp.* v. *Coleman*, 455 U.S. 363, 373–374, 102 S.Ct. 1114, 71 L. Ed. 2d 214 (1982) (recognizing standing for a violation of the Fair Housing Act); *Tennessee Elec.*

---

[3] Specifically, the section of the FCRA at issue in *Spokeo* required: "consumer reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy of' consumer reports." *Spokeo*, 136 S. Ct. at 1545.

> *Power Co.* v. *TVA*, 306 U.S. 118, 137–138, 59 S.Ct. 366, 83 L. Ed. 543 (1939) (recognizing that standing can exist where "the right invaded is a legal right,— one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege").

*Id.* at 1551 and 1553 (Thomas, J., concurring)

The Supreme Court therefore has not articulated any limitation on Congress's ability to define Article III injuries in the context of *substantive* rights. *See Church*, 654 F. App'x at 995 n.2 (11th Cir. 2016) ("In *Spokeo*, the Court stated that a Plaintiff 'cannot satisfy the demands of Article III by alleging a bare procedural violation.' *Spokeo*, 136 S. Ct. at 1550. This statement is inapplicable to the allegations at hand, because Church has not alleged a procedural violation. Rather, Congress provided Church with a substantive right…").

In *Flaum*, the court noticed that the Supreme Court in *Spokeo* made two examples of procedural violations: 1) "here a consumer reporting agency fails to provide a required notice to a user of the agency's consumer information, but the information turns out to be entirely accurate regardless"; 2) "where a consumer agency reports some trivial inaccurate information, such as an incorrect zip code, which works no concrete harm upon the consumer." *Flaum*, 204 F. Supp. 3d at 1340. Most importantly, the court in *Flaum* observed that "the Supreme Court recognized where Congress has endowed plaintiffs with a *substantive* legal right, as opposed to creating a procedural requirement, the plaintiffs may sue to enforce such a right without establishing additional harm." *Id.* (emphasis in original).  In light of the Supreme Court's explanation of what may be a procedural violation and as confirmed in *Flaum*, Plaintiff here suffered a violation of his substantive rights that is a concrete harm.

With FACTA, Congress created a substantive right to a receipt that does not disclose more than the last five digits of one's credit card number.  *Guarisma v. Microsoft Corp.*, 209 F. Supp. 3d 1261, 1265 (S.D. Fla. 2016) ("The Court is persuaded Congress intended to create a

7

substantive right."); *Amason v. Kangaroo Exp.*, No. 7:09–CV–2117–RDP, 2013 WL 987935, at

*4 (N.D.Ala. Mar. 11, 2013) ("[T]he statutory provisions invoked by Plaintiffs, 15 U.S.C. §§

1681c(g) and 1681n, create a *substantive right* to have one's financial information protected

through truncation and also provide a procedural right to enforce that truncation." (alteration and

emphasis added)).

The disclosure of information on a receipt in violation of FACTA constitutes a concrete

injury. *Guarisma*, 209 F. Supp. at 1266 ("Congress gave consumers the legal right to obtain a

receipt at the point of sale showing no more than the last five digits of the consumer's credit or

debit card number."); *see also, Deschaaf v. Am Valet & Limousine, Inc.*, 2017 WL 610522, *4

(D. Ariz. Feb. 15, 2017); *Amason v. Kangaroo Exp.*, No. 7:09-CV-2117-RDP, 2013 WL 987935,

at *3 (N.D. Ala. Mar. 11, 2013) ("decades of case law have made clear that where Congress

creates a substantive legal right, even a right that did not previously exist, that right constitutes a

legally protected interest, the invasion of which creates an injury in fact"). The parts of FACTA

relevant in this action indeed do not contain any procedural provision. *See* 15 U.S.C. §1681c(g);

*see also Flaum*, 204 F. Supp. 3d at 1341 ("The Court is persuaded Congress intended to create a

substantive right.").

Consistent with the foregoing, Eleventh Circuit case law confirms that a violation of a

substantive right causes a concrete injury. *See Perry v. Cable News Network, Inc.*, 854 F.3d 1336

(11th Cir. 2017). In *Perry*, plaintiff brought suit under the Video Privacy Protection Act (VPPA)

and did not allege any additional harm beyond the statutory violation. *Id.* at 1340. The Eleventh

Circuit held that alleging a violation of the VPPA for a wrongful disclosure is sufficient for

standing purposes. *Id.* at 1341. The Court found that the structure and purpose of the VPPA

provided actionable rights, and that violation of the VPPA constituted a concrete harm. *See also*,

*Church v. Accretive Health, Inc.*, 654 F. App'x 990, 993 (11th Cir. 2016) (Unpublished) ("Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures…"); *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, No. 16-17483, 2017 WL 2415966 at *2 (11th Cir. June 5, 2017).

Defendants mistakenly rely on *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016), *rehearing denied*, 855 F.3d 1265 (11th Cir. 2017) and fails to mention the subsequent opinion of *Perry*. *Nicklaw* presents a completely different situation and hence has no bearing on this action. The plaintiff in *Nicklaw*, unlike the Plaintiff here, suffered a mere procedural violation of a New York real estate statute governing the time for filing a satisfaction of mortgage, and failed to allege "a harm [or] a material risk of harm that the district court could remedy". *See Nicklaw*, 839 F.3d at 1000. Specifically, the *Nicklaw* statute had both a substantive component (the right to a recorded release of mortgage) and a procedural component (the obligation to record the release within 30 days). *See id*. The plaintiff only alleged a violation of the procedural component because, by the time he sued, the release had been recorded. *Id.* at 1003. *Id.* at 1003. Moreover, *Nicklaw* involved a state statute which, unlike acts of Congress, might not elevate the harm to an Article III injury. *See Khan v. Children's Nat'l Health Sys.*, 188 F.Supp.3d 524, 534 (D. Md. 2016). (plaintiff gave "no authority for the proposition that a state legislature or court, through a state statute or cause of action, can manufacture Article III standing for a litigant…"). Accordingly, *Nicklaw* supports Plaintiff because it recognizes that a risk of harm can give rise to standing and is at best inapposite with regards to whether a violation of a substantive right is sufficient for standing.

Finally, the other cases Defendants rely on are readily distinguishable. Defendants cite

*Kamal v. J. Crew Grp., Inc.*, No. 2:15-0190 (WJM), 2016 WL 6133827 (D.N.J. Oct. 20, 2016), a decision from the District of New Jersey. First, *Kamal* does not confront the reasoning of the unbroken line of courts in this Circuit that ruled that FACTA creates a substantive right the violation which is, itself, a concrete injury. *Guarisma*, 2016 WL 4017196 at *3-*4; *Wood*, 201 F.Supp.3d at 1337–38; *Bouton*, 201 F.Supp.3d at 1352 (S.D. Fla. Aug. 15, 2016); *Flaum*, 204 F.Supp.3d at 1340–41 (S.D. Fla. Aug. 29, 2016); *Altman*, 2016 WL 3946780 at *4-*5 (N.D. Ga. July 13, 2016); *see also*, *e.g.*, *Perry v.*, 854 F.3d at 1338.

Second, *Kamal* is factually distinguishable. *Kamal* opined that the plaintiff's allegations in that case did "not implicate traditional common law privacy interests" because "[p]laintiff's personal information was not disclosed to third parties." *Kamal*, 2016 WL 6133827 at *3. By contrast, here Plaintiff's receipt was necessarily handled by the servers identified on the receipts he received and thus his personal credit card information was exposed to at least two people.[4] *See* Exhibit 1. Accordingly, Defendants' conduct bears a close relationship to "a harm that that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts" thus demonstrating a *de facto* injury. *Spokeo*, 136 S. Ct. at 1545. Invasion of privacy is a well-established basis for a lawsuit. *See Parks v. IRS*, 618 F.2d 677, 683 (10th Cir. 1980) (the "common law tort of invasion of privacy" created a remedy for "personal wrongs which result[ed] in injury to plaintiffs' feelings and [were] actionable even though the plaintiff suffered no pecuniary loss nor physical harm. *It is the invasion of the right that is the essence of the*

---

[4] Notably, servers have been responsible for various identity theft schemes in the past. *See* http://www.nbcwashington.com/news/local/Cheesecake-Factory-employees-accused-of-stealing-117K-from-customer-credit-cards-94689504.html; http://www.washingtonpost.com/wp-dyn/content/article/2010/05/23/AR2010052302921.html; http://fox59.com/2015/04/03/server-arrested-for-stealing-credit-card-numbers-at-restaurant/.

*action*."), citing 62 Am. Jur. 2d Privacy §45 (emphasis added); *accord Pichler v. UNITE*, 542 F.3d 380, 398–99 (3d Cir. 2008).[5]

Third, *Kamal* relies in part on the Credit and Debit Card Clarification Act of 2007, Pub. L. No. 110–241, which has no bearing on this case. The Clarification Act only concerned FACTA lawsuits that alleged a failure to mask the card expiration date when the card account number was properly masked. *See* Pub. L. No. 110–241 at §2(a)(3)-(4); *see also, Deschaaf,* 2017 WL 610522, at *4 ("Congress did *not* eliminate the truncation requirement as to expiration dates,[6] and after the temporary safe harbor period ended, merchants who printed expiration dates were not in compliance with FACTA.") (emphasis in original). The Clarification Act does not address lawsuits based on a failure to properly mask the card account number which, as case law and the Clarification Act itself recognizes, creates an unacceptable risk of harm a risk of harm. *See id.* Thus, *Kamal*'s reliance on the Clarification Act and cases that cite it does not justify its outcome.

Finally, *Kamal*'s discussion suggests a belief that the risk of harm caused by disclosing the first six and last four digits of a credit card account number on a transaction receipt is too speculative, but this improperly disregards Congress's determination that the risk is real. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 626 and 639 (7th Cir. 2014) ("the less information

---

[5] Moreover, courts "have recognized as a 'species of privacy violation … violations of a right to secrecy of personal information.'" *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333-34 (S.D. Fla. 2009), *subsequently rev'd in part on other grounds*, 444 F. App'x 370 (11th Cir. 2011). This includes allowing lawsuits based on a disclosure of private information, even without consequential damage. Warren & Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. at 199, n.6 ("[The right] does not turn upon the form or amount of mischief or advantage, loss or gain.")  Indeed, the Third Circuit just confirmed that "the unlawful disclosure of legally protected information" is a concrete injury under *Spokeo*.  *See In re Nickelodeon Privacy Litig.*, 2016 U.S. App. LEXIS 11700 at *22 (3rd. Cir. June 27, 2016).  That is precisely what Plaintiff alleges here because again, FACTA makes it unlawful for Defendants to disclose the card number of his credit card on its transaction receipt.

the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information" . . . "identity theft is a serious problem, and FACTA is a serious congressional effort to combat it."). Congress's determination that the risk is real is entitled to deference. *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 665 (1994) (Congress "is far better equipped than the judiciary to amass and evaluate the vast amount of data bearing upon" legislative questions) (internal quotation omitted); *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 331, n.12 (1985) ("those findings are of course entitled to a great deal of deference."). *Spokeo* holds a "risk of real harm" is enough to meet the concrete injury test. *Spokeo*, 136 S.Ct. at 1549. But *Kamal* fails to acknowledge this.

Similarly, *Katz v. Donna Karan Int'l, Inc.*, No. 14 CIV. 740 (PAC), 2017 WL 2191605 (S.D.N.Y. May 17, 2017) is based on the wrong assumption that a FACTA violation is a *procedural* one. 2017 WL 2191605 at *3-4. With regard to *Thompson v. Rally House of Kansas City, Inc.*, No. 15-00886-CV-W-GAF, 2016 WL 8136658, (W.D. Mo. Oct. 6, 2016), the court expressly acknowledged that "its decision [was] not in line with other post–*Spokeo* cases examining whether a bare FACTA violation with no allegation of concrete harm is sufficient for Article III standing." 2016 WL 8136658 at * 5 (citing *Wood*, 2016 WL 4249953; *Guarisma*, 209 F. Supp. 3d; *Altman*, 2016 WL 3946780, at *4). The court in *Thompson* in fact noted that "[p]laintiff has also argued that substantive violations of a statute should be treated differently than procedural violations . . . [g]iven that *Spokeo* and *Braitberg* both use the phrase 'bare *procedural* violation' rather than 'bare *statutory* violation,' there is some appeal in that argument." 2016 WL 8136658, at *5. However, despite this reluctance the *Thompson* court concluded it was bound by *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925 (8th Cir. 2016), the Eight Circuit precedent. *See Thompson*, 2016 WL 8136658 at *5. Here, instead biding

precedent of the Eleventh Circuit mandates the opposite result. *See Perry*, 854 F.3d at 1341 (holding that a violation of substantive statutory privacy rights are sufficient to demonstrate standing); *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 993 (11th Cir. 2016) ("An injury-in-fact, as required by Article III, may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing") (internal quotation omitted); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1330 (11th Cir. 2013).

Lastly, Defendants' analogy to cases dealing with the printing of the expiration date of the card, [ECF No. 52 at 8-9], are inapposite because, among other reasons, in those cases the printing of the expiration date *alone* was determinative of the lack of standing. *See Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 82 (2d Cir. 2017) ("it is hard to imagine how the expiration date's presence could have increased the risk that [plaintiff's] identity would be compromised.") (quoting *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016)). That is not the case here. Defendants printed *two* receipts showing *ten* digits of two of Plaintiff's credit cards, and those receipts were seen by at least one other person each.

In sum, as *Spokeo* pointed out, Congress has the power to define injuries and so it did when it enacted FACTA. Therefore, Plaintiff suffered a concrete injury deriving from Defendants' violation of his substantive rights under the Act.

## 2. Defendants' Actions Caused Plaintiff Additional Harms in the Form of Increased Risk of Identity Theft

Plaintiff also suffered additional harm that was traditionally recognized at common law and later identified by Congress. In fact, according to *Spokeo*, an individual suffers a "concrete" harm if the alleged injury is analogous to a harm identified by Congress or recognized at Common Law:

In determining whether an intangible harm constitutes injury in fact, both history

and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. [citation omitted]. In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.

*Spokeo*, 136 S. Ct. at 1549. And here Plaintiff precisely suffered a harm recognize both by Congress and at Common Law.

A. <u>Congress Determined that the Risk of Identity Theft Constitutes Concrete Injury</u>

Congress determined that printing a transaction receipt that discloses more than the last five digits of a credit card number or the expiration date subjects the cardholder to a real risk of identity theft because anyone who sees the receipt has a demonstrably easier time using the information to commit fraud. *See Bouton*, 201 F. Supp. 3d at 1346 ("Congress enacted FACTA, an amendment to the Fair Credit Reporting Act, in an effort to 'protect[ ] consumers from identity theft.'") (citing *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009)); *Wood*, 201 F. Supp. 3d at 1334 ("FACTA was enacted . . . with the intended purpose of helping to combat identity theft."); *Flaum*, 204 F. Supp. 3d at 1341 ("The FACTA's legislative history supports the Court's finding Congress desired to create a substantive legal right for consumers to utilize in protecting against identity theft."); *Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information"). Therefore, [a] person or entity who prints an expiration date on a receipt . . . creates a real risk of identity theft—the very harm that FACTA was enacted to combat." *Deschaaf*, 234 F. Supp. 3d at *3.

Further, at the time Congress enacted FACTA, it determined that identity theft had

14

"reached almost epidemic proportions." [H.R. Rep. No. 108-263 at 25 (2003)]. Over 27 million Americans had been victims of identity theft in the past five years, and the estimated cost to consumers and the economy was over fifty billion dollars annually. [*Id.*, citing Federal Trade Commission, *Identity Theft Survey Report* (2003)]. In addition, the direct costs of financial fraud, identity theft, or even the fear of identity theft, have a powerful psychological effect on consumers, as "36% of identity theft victims reported moderate or severe emotional distress as a result of the incident." [*Id.*, ¶11, citing Bureau of Justice Statistics, U.S. Dep't of Justice, *Victims of Identity Theft, 2014*, at 1 (Sept. 2015)]. Then, President Bush echoed Congress's concern when he signed FACTA into law, noting that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." Statement by President George W. Bush Upon Signing H.R. 2622, 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). These determinations are entitled to deference. *Turner*, 512 U.S. at 665-66 (1994) ("Congress is far better equipped than the judiciary to 'amass and evaluate the vast amount of data' bearing upon legislative questions), citing *Walters*, 473 U.S. at 330, fn.12 (1985) ("those findings are of course entitled to a great deal of deference…").

The case law confirms the Congress' concerns. In *Deschaaf* for instance, the court amply explained that printing the credit or debit card information creates a "real risk" of identity theft and such risk of identity theft is a concrete harm itself. *Deschaaf*, 234 F. Supp. 3d at *3. Further,

> this harm [is not] made harmless when, as here, the risk fails to materialize because no potential identity thief actually sees the receipt. Even in this situation, the consumer must take additional steps to ensure the safety of her identity; she may not simply crumple the receipt and throw it into a nearby trash can, but must review it to assess what was printed, hold on to it, and perhaps shred it or cut it up later. The inconvenience may be minor; but the additional inconvenience that a consumer must undertake in order to secure their own rights, when a statute places that burden on others, is surely a concrete harm.

*Id.* Similarly, in *Altman* the court recognized that "Congress did not find

the risk of identity theft to be speculative" and accordingly denied defendant's motion to dismiss. *Altman*, 2016 WL 3946780, at *6.

In contrast, Defendants' reliance on *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) to sustain that a risk injury is insufficient to confer standing is inapposite. In *Clapper*, there was no congressional finding of real risk and the only possibility of harm was contingent on a series of coincidences.

> Respondents assert that they can establish injury in fact that is fairly traceable to § 1881a because there is an objectively reasonable likelihood that their communications with their foreign contacts will be intercepted under § 1881a at some point in the future. This argument fails. . . . respondents' argument rests on their highly speculative fear that: (1) the Government will decide to target the communications of non-U.S. persons with whom they communicate; (2) in doing so, the Government will choose to invoke its authority under § 1881a rather than utilizing another method of surveillance; (3) the Article III judges who serve on the Foreign Intelligence Surveillance Court will conclude that the Government's proposed surveillance procedures satisfy § 1881a's many safeguards and are consistent with the Fourth Amendment; (4) the Government will succeed in intercepting the communications of respondents' contacts; and (5) respondents will be parties to the particular communications that the Government intercepts.

*Clapper*, 568 U.S. at 410. The FACTA violations here could cause harm if Plaintiff or a class member threw away their receipts, or one of Defendants' employees copied the information off of those receipts, and then used that information to obtain the remainder of the credit card information necessary to commit a fraudulent transaction. Whether by guessing the information in a so called brute force attack or by using the known information in a confidence scheme to obtain the remaining information, it requires no speculation to say that more exposed credit card information means a higher risk of identity theft.[6]

---

[6] Assuming a 16 digit credit card number, exposing ten digits, as was done here, means that only six digits need to be guessed and so there are $10^6$ (ten to the sixth power) possible combinations or 1,000,000 choices for an identity thief to guess from. If instead only the five digits permitted under FACTA are exposed there are eleven digits that need to be guessed, and similarly $10^{11}$ (ten to the eleventh power) possible combinations of remaining digits, or 100,000,000,000. Although

Defendants argue that the first six digits which it exposed correspond to the card issuer and thus they did not in fact reveal any information they were not permitted to show. [ECF No. 52, p. 14] (*citing Katz*, 2017 WL 2191605, at *1 ("The first six digits do not disclose any information about plaintiff, but rather 'identify the institution that issued the card to the card holder.'"). First, this argument overlooks that Visa issued Plaintiff's cards and that Visa is an "issuer identification blockholder," which means an "entity that owns 2 or more issuer identification numbers."[7]   Also, this argument fails to recognize that there is a qualitative difference between revealing the card issuer and thereby possibly revealing the first six digits of the card number to someone with the requisite, esoteric knowledge and directly revealing the first six digits of the card number which would be immediately useful to any would-be identity thief. Finally, as Congress was no doubt aware when it passed FACTA, merchants do not typically identify the specific card issuer on receipts but rather the credit card brand, e.g. Visa, MasterCard, American Express, etc., and these entities hold significant blocks of issuer identification numbers which precludes even someone with knowledge of the intricacies of the credit card numbering system from knowing the exact six-digit issuer identification number. Regardless, the risk of identity theft at issue here has already been established as a real risk, and FACTA was enacted precisely in response to this growing problem of "epidemic proportions." *See* [H.R. Rep. No. 108-263 at 25 (2003)].

---

correctly guessing a six-digit number may be literally 1 in a million and quite unlikely, with the aid of a computer this could be feasible. Guessing an eleven-digit number is a 1 in a hundred billion chance, and demonstrably more difficult and time consuming even with mechanical help.

[7] See the website of the American National Standards Institute which administers credit card numbers.   https://www.ansi.org/other_services/registration_programs/IIN?menuid=10   (last accessed: August 9, 2017) ("All interchange [Issuer Identification Numbers ("IINs")] are six digit numbers and each card issuer is entitled to one IIN (outside of its membership of any card schemes, for example an IIN assigned from Visa).").

Similarly, the other data breach cases Defendants cited are distinguishable. In fact, in both *Case v. Miami Beach Healthcare Grp., Ltd.*, 166 F. Supp. 3d 1315 (S.D. Fla. 2016) and *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278 (M.D. Fla. 2016) the plaintiffs brought an action for breach of contract arising out of a data breach. Plaintiffs in these cases failed to plausibly allege that defendant engaged in some form of misuse of the data. *Case*, 166 F. Supp at 1318-1319; *Torres*, 195 F. Supp. 3d at 1284. However, here a specific statute demonstrates that Defendants misused the information they were entrusted by Plaintiff and the putative class.

The very moment Defendants printed a receipt bearing ten digits of Plaintiff's credit card account number, it exposed Plaintiff to the risk identified by Congress and elevated to concrete harm through FACTA. Luckily Plaintiff detected the increased risk and took precautions, but that does not change the fact that through Defendants actions he was one step away from discarding his receipts and risking giving identity thieves a "key to [his] savings and financial secrets." Statement by President George W. Bush Upon Signing H.R. 2622, 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

## B.  Plaintiff's Privacy Interests Were Breached

Plaintiff's privacy rights were invaded when Defendants printed Mr. Saleh's credit card information on his receipts, potentially exposing them to any person who handled the receipt. This is another harm Congress intended to avoid passing FACTA:

> Congress, at the very least, recognized a card holder's right of privacy in the card holder's complete card account number and account information, and a corresponding right of privacy not to have that information exposed on an electronically printed payment card receipt.

*Creative Hospitality Ventures*, 655 F. Supp. 2d at 1333-34.

This injury is concrete because it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S.

Ct. at 1549. Currently, nearly every state recognizes invasion of privacy in its tort law. *See* Eli A. Meltz, *No Harm, No Foul? Attempted Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431, 3440 (May 2015) (concluding after state survey that "[c]urrently, the vast majority of states recognize the intrusion strand of invasion of privacy either under common law or by statute"). The right to privacy is also protected under the Constitution. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558 (2003); *Eisenstadt v. Baird*, 405 U.S. 438 (1972). American courts have long recognized that "[o]ne who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other." Restatement (Second) Torts § 652A (1977). Specifically, this district has "recognized as a 'species of privacy violation … violations of a right to secrecy of personal information . . . '" *Creative Hospitality Ventures*, 655 F. Supp. 2d at 1333-34 (quoting *Hooters of Augusta v. Am Global Ins. Co.*, 157 Fed. Appx. 201, 208 (11th Cir. 2005)).

Hence, the invasion of Plaintiff's privacy rights through the exposure of his credit card information to the public is a harm traditionally recognized at Common Law that according to *Spokeo* constitutes a concrete injury sufficient to confer Article III standing.

### 3. A Stay of Discovery is Unwarranted and Will Prejudice Plaintiff

To prevail on a motion to stay discovery, "the movant must show that good cause and reasonableness support a stay." *Bocciolone v. Solowsky*, No. 08-20200-CIV, 2008 WL 2906719, at *2 (S.D. Fla. July 24, 2008) (internal quotation omitted). Motions to stay discovery are disfavored "because when discovery is delayed or prolonged it can create case management problems which impede the [c]ourt's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*, No. 16-CV-62175, 2016 WL 6777896, at *1 (S.D. Fla. Nov. 16, 2016) (internal quotation omitted).

Moreover, courts are not compelled to grant a stay whenever there is a motion to dismiss pending. *Id.*; *Ray v. Spirit Airlines, Inc.*, No. 12-61528-CIV, 2012 WL 5471793, at *3 (S.D. Fla. Nov. 9, 2012); *Proflex Prod., Inc. v. Protecto Wrap Co.*, No. 12-21280-CIV, 2013 WL 12061839, at *1 (S.D. Fla. Feb. 28, 2013). The usual duty to respond to discovery requests weighted against a plaintiff's prejudice in delaying an action does not militate in favor of a stay. *See Odes v. Harris*, No. 12-61561-CIV, 2013 WL 11960011, at *2 (S.D. Fla. Mar. 8, 2013) (denying the motion to stay after "the [c]ourt weighed the prejudice Plaintiffs would suffer by a delay in the prosecution of their case against the burden Defendants asserted they would suffer in having to respond to discovery in this case, taking into consideration the policy in this district that stays of discovery should be the exception rather than the rule.").

In *Koppelman*, the court noted that motions to stay are normally disfavored and expressly distinguished *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997), one of the cases Defendants rely on, noting that those were "exceptional circumstances . . . where the district court did not rule on a motion to dismiss for over a year and a half". *Koppelman*, 2016 WL 6777896, at *2; *see also Ray*, 2012 WL 5471793, at *3; *Bocciolone*, 2008 WL 2906719, at *2.

Here, Defendants fail to show good cause to grant the stay. Moreover, Defendants' contention that "there would be no prejudice to Plaintiff to stay discovery", [ECF No. 52 at 17], is erroneous. The Parties have spent a significant amount of time and resources pursuing this action during the past seven months. Plaintiff is currently attempting to obtain meaningful discovery responses from RCI and a discovery hearing has been set for September 22, 2017. A stay of discovery would disturb Plaintiff's efforts in this respect. Furthermore, Plaintiff relied on Defendants' apparently untruthful promise to allow discovery into "all relevant topics at all times

during the discovery period." [ECF no. 18, at p. 3]. The Defendants could have filed the instant

motion and informed Plaintiff of their intention to seek a stay before even filing their Answer.

Plaintiff has been diligently pursuing discovery and advancing this case for seven months. A stay

at this point obstructs these efforts and is deeply prejudicial.

## CONCLUSION

Wherefore, Plaintiff respectfully requests that this Court deny Defendants' Motion, [ECF

No. 52], in its entirety.

Dated: August 10, 2017

Respectfully submitted,

/s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Suite 235
Hollywood, Florida 33019
Phone: 954-589-0588
Toll free: 844-SDO-LEGAL
Fax: 954-337-0666
scott@scottdowens.com

Jibrael S. Hindi, Esq.
THE LAW OFFICE OF
JIBRAEL S. HINDI, PLLC
110 SE 6th Street
Ft. Lauderdale, FL 33301
Telephone: (954) 907-1136
Facsimile: (855) 529-9540
jibrael@jibraellaw.com

BRET L. LUSSKIN, Esq.
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Ste. 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

*Attorneys for Plaintiff*

21

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on August 10, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the forgoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties below, if any, who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Scott D. Owens*  
Scott D. Owens, Esq.

22